PAUL H. RIEGER, Appellant, *vs.* BERKELEY BRANDT *et al.*
Appellees.

*Opinion filed February 24, 1928.*

1. PRINCIPAL AND AGENT—*real estate broker must keep principal informed of matters relating to subject of agency.* The relation between a principal and agent for the sale of property is fiduciary, and the agent, in the exercise of good faith, is bound to keep his principal informed of all matters that may come to his knowledge pertaining to the subject matter of the agency, and he may not purchase his principal's property except upon the fullest disclosure of all matters within his knowledge which may affect its value.

2. SPECIFIC PERFORMANCE—*when bill to enforce performance of contract of sale to broker must be dismissed.* A bill to enforce performance of a contract to sell land to the vendor's broker must be dismissed for want of equity where the evidence shows that at the time of entering into the contract the agent failed to disclose to his principal offers to buy the land at a higher figure; nor can the complainant insist that the agency had been terminated where the commission agreed upon is deducted from the purchase price, as an agent cannot terminate an agency for one purpose and recognize it for another.

APPEAL from the Circuit Court of DuPage county; the Hon. JOHN K. NEWHALL, Judge, presiding.

CHARLES HUDSON, and FREDERICK C. HARBOUR, for appellant.

CHARLES W. HADLEY, (HARRY G. WEAVER, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an action for specific performance of a contract to convey land. The contract was signed by Berkeley Brandt and Grace E. Brandt, his wife. The defense to the action is that the complainant, appellant here, was the agent of Brandt, and at the time the contract to convey the land

to him was executed, and prior thereto, he had received offers for the land at an advance of $200 per acre over the price set out in the contract but did not inform Brandt of the offer. The answer alleges that for this reason appellant is not entitled to specific performance. The land in question is a farm consisting of 130 acres, near Glen Ellyn, in DuPage county, on the south side of what is known as the Roosevelt road.

The following facts are undisputed: Brandt and Rieger both lived in Elmhurst, Illinois, and had been acquainted for about sixteen years. They belonged to the same bowling league and attended the same church. In 1923 Brandt moved to California. Rieger is a licensed real estate broker, and had been for about three years prior to the execution of the contract in question. In 1924 he had sold a piece of property located in Elmhurst belonging to the Emery estate, in which Brandt's wife had an interest. Brandt in November, 1924, listed the farm in question with Rieger for sale at a price of $400 per acre, Rieger to receive a commission of five per cent. It appears that Brandt's mother at the time of her death, which occurred some time preceding the transaction here considered, had an interest in this land. It was necessary to adjust the inheritance tax before a clear title could be given to the property. This was completed in the spring of 1925. On April 28, 1925, Rieger wrote Brandt a letter, in which he stated: "Several parties, including myself, will buy the place at the rate of $400 per acre on the following terms: * * * You will, of course, allow me the usual commission of five per cent." This letter also stated: "We will put the property in shape for a fee golf course, and later, if advisable, subdivide into residence lots." On May 11 Brandt replied that the price of the farm was all right; that he ought to have at least $15,000 to $20,000 cash, and asked Rieger to wire more in detail as to whether the parties were financially responsible and the form of contract to be used, stating that if neces-

sary he could come to Chicago to fix things up later. On May 18 Rieger telegraphed to Brandt: "Accept your proposition; fifteen thousand cash; see letter." On May 23 following, Rieger again wrote Brandt, enclosing a contract for warranty deed, stating, "I have deducted the commission of five per cent from the purchase price." On May 28, 1925, Brandt wrote to Rieger that there were a number of things he did not like and perhaps did not understand and that he was coming to Chicago. He arrived in Chicago on June 8 and met Rieger on June 11 at the office of Alben F. Bates, an attorney at law. At that time and place the contract was executed, by which it was agreed that Brandt and his wife were to sell and Rieger was to purchase the property for $50,000, $2000 to be deducted from the purchase price of $400 per acre as commission to Rieger. The contract provided that within fifteen days an abstract of title or guaranty policy was to be delivered to Rieger. Within fifteen days thereafter Rieger was to submit objections, if any, and Brandt was to have sixty days in which to cure objections. The contract recited that $1000 had been put up with Bates as earnest money. Brandt had a power of attorney from Grace E. Brandt, his wife, to sign the contract, and did so. It is admitted by Rieger that certain negotiations took place between himself, Edward F. Cooke, a real estate dealer, and the firm of Harris & Reeves, landscape architects, concerning the purchase of the property, and that the price at which the property was submitted to them was $600 per acre. On August 7 Rieger entered into a contract for the sale of the property to an organization known as the Catholic Sisters of St. Patrick's Academy at a purchase price of $550 per acre, cash. He admitted that he at no time disclosed to Brandt the negotiations with Harris & Reeves or the Catholic Sisters.

The hearing was before the court. The chancellor found that Rieger had had a *bona fide* offer for the premises at $600 per acre, made by Harris & Reeves on or about

April 6, 1925; that Rieger was the agent of Brandt and as such was duty bound to report such offer to his principal but that he did not inform Brandt of this offer or these negotiations, and that by reason of such facts the contract for sale of the premises to Rieger was null and void, and his bill was dismissed. A cross-bill was filed by Brandt to remove the contract as a cloud on the title, and the prayer of the cross-bill was granted. Rieger brings the cause here, alleging that the finding of the chancellor was contrary to the evidence, and assigning as error the ruling of the chancellor on the admission of evidence.

The principal question involved in the case is whether the evidence supports the decree. Appellees' witnesses Josephine L. Peabody, Allen A. Meyers, H. T. Reeves and Robert B. Harris all testify that Harris and Reeves were taken to see the property by Edward F. Cooke, a real estate dealer, who represented that Rieger was his acreage man and that they were together in the matter of selling the Brandt farm. It appears from the testimony of Peabody and Meyers that they first learned that Harris and Reeves were interested in such property as a golf course and that they informed Cooke. These four witnesses testify that on April 2, 1925, they, with Cooke, visited the farm; that Rieger was not with them at that time; that on Monday, April 6, all of them, with Rieger, met in Harris and Reeves' office, where further discussion with reference to the purchase of the farm took place. Ralph Hoffmann, tenant on the premises, also fixed the date of the visit of these parties to the farm as the first half of April. He testified that he fixed the time by the fact that he was just sowing oats. Carolyn Edgerton, secretary in the office of Harris & Reeves, fixed the time of the conference in that office between these parties as the first half of April. She fixes the time by the fact that Reeves had been away from the office for some time and returned around the middle of March, and that the conference was about two weeks there-

after. Cooke admits that the farm was shown but denies that it was shown on April 2. He testified it was about the middle of May when he first met Harris and Reeves; that he had not talked with them prior to that time. Rieger also testified that his first conversation with Harris and Reeves occurred about the 23d of May and denied that he saw them in April. The clear preponderance of the evidence, however, is against their testimony on this point and establishes that Harris and Reeves were taken to see this property on April 2, 1925, and that on April 6 a meeting was had with them, attended by Harris, Reeves, Peabody, Meyers, Cooke and Rieger.

Harris, Reeves, Peabody and Meyers testify that Harris and Reeves offered to purchase the property at $600 per acre and to make a deposit of $2500 as earnest money; that they said that it was necessary to get possession by August 1. It also appears in evidence that Harris and Reeves secured permission to negotiate with the tenant, Hoffmann, regarding the use of a portion of the land for the purpose of sowing certain seed for grass used for putting greens in golf courses; that they expended about $2000 in purchasing and putting down a pump and water pipes, paying for plowing, labor, transportation, rent, and like expenses in preparing and seeding the portion of the ground leased from the tenant. Both Harris and Reeves testify that around August 1 Rieger appeared at their office and told them that he could then proceed with the closing of the deal for the land; that they then told him that they could not take the land without a re-arrangement of the terms, as it was too late for them to do the work necessary to be done in order to have the ground in condition for a golf course by the ensuing spring.

Rieger and Cooke testified that the proposition to sell this land at $600 per acre, with a down payment of $2500 and a payment of $15,000 by August 1, was made to Harris and Reeves but that they did not agree to take the

property; that Rieger frequently demanded the deposit of earnest money, but it was not put up. Harris and Reeves both testify that they were ready at all times, until it became too late for them to take the property, to put up the earnest money, and so told Rieger and Cooke. In this they are supported by the testimony of Peabody and Meyers, who were interested as the real estate agents who had introduced the customer to the deal. Meyers testified that on April 6, 1925, Harris and Reeves signified a readiness to put up the $2500 as earnest money; that she had on numerous occasions sought to have Rieger close the deal but without result, and that on May 18 she wired Rieger inquiring why the deal was not closed but received no reply. That this offer was made prior to the execution of the contract herein is further indicated by Rieger's letter to Brandt on April 28, hereinabove referred to, in which he states, "We will put the property in shape for a fee golf course." This was the use to which Harris and Reeves expected to put the property, and indicates that they were the parties whom Rieger had in mind at the time he wrote this letter to Brandt. It appears that some delay occurred by reason of the abstract furnished by Brandt under the contract having become lost in transit. On September 8, 1925, Peabody sent a telegram to Brandt indicating that she had a buyer for the farm at the price of $600 per acre, and the evidence is undisputed that this is the first intimation that Brandt had that the property could be sold for more than $400 per acre.

On December 9 and 10 two meetings were had in the office of William H. Dellenback, an attorney at law in Chicago. At the second of these meetings there were present Rieger, Albert B. Moore, his attorney, Bates, Cooke, Grace E. Brandt and Dellenback. Bates testified that either he or Dellenback asked Rieger why he did not submit a proposition of $600 per acre to Brandt for the sale of the property, to which he replied that he did not consider it a

*bona fide* proposition. On a repetition of the question he replied, "I was negotiating for the purchase of the farm myself." Bates' testimony in this regard is corroborated by that of Dellenback and Mrs. Brandt. Rieger denied that he had said that he was negotiating for the property at the time the Harris and Reeves transaction was up, but testified that he replied that he had purchased the property at that time. Cooke testified that he does not remember that he (Rieger) made any statement about trying to get the property for himself. Moore testified that in reply to Dellenback's question as to why Rieger did not report to Brandt the negotiations with Harris and Reeves, he said that he considered the property was his then, and that he didn't pay much attention to those parties and didn't think they were responsible and never had had a *bona fide* offer from them. It is shown by the testimony of Lottie Nebraska and Lena Schulz that the Catholic Sisters of St. Patrick's Academy came out to see the farm on the 19th of May, 1925. These are the parties to whom Rieger on August 7 contracted to sell the property.

From the review of this evidence we are of the opinion that it clearly establishes that a *bona fide* offer was received from Harris and Reeves to take this property at $600 per acre and that they stood ready to take it on the terms specified by Rieger until July 27, at which time they declined to proceed owing to the delay in closing the matter. It is also established that on May 19 Rieger had shown this property to the Catholic Sisters of St. Patrick's Academy, with whom he afterwards made a contract of sale. These transactions all occurred before the date of the contract in question here. The rule well established in equity is that the relation existing between a principal and agent for the sale of property is a fiduciary one, and the agent, in the exercise of good faith, is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. He may

not purchase his principal's property except upon the fullest disclosure of all matters within his knowledge which may affect its value. (*Perry* v. *Engel,* 296 Ill. 549; *Fox* v. *Simons,* 251 id. 316; *Tyler* v. *Sanborn,* 128 id. 136; *Norris* v. *Tayloe,* 49 id. 17; Perry on Trusts,—6th ed.—sec. 206.) This is the general rule. (21 R. C. L. pp. 828-830.)

Appellant contends that the evidence shows that he had terminated his agency; that his letter of April 28, 1925, stating that he, with others, would buy the property at $400 per acre terminated the agency and ended the fiduciary relationship existing between himself and Brandt, and that he was therefore free to contract. There are several facts which dispute this position. In the first place, Rieger in this letter states, "We will put the property in shape for a fee golf course." This, as we have seen, taken in connection with the proposition of Harris and Reeves, indicates that he had in mind at that time the sale to them. This is further borne out by his offer, around August 1, to close the deal with them, stating at that time that the property was then so it could be transferred. This position is also disputed by Rieger's statement in the letter of April 28, "You will, of course, allow me the usual commission of five per cent." It seems certain that Brandt could not have suspected that Rieger was attempting to terminate the agency for the property under those circumstances. An agent cannot terminate the agency for one purpose and recognize it for another. The evidence shows that at the time of the making of the contract a conference was had about the commission. Five per cent commission on the sale of the land at $400 per acre would amount to $2600. Brandt testified that at the time of the execution of the contract they agreed that Rieger's commission should be allowed and that the farm should net Brandt $50,000. He also testified that when the contract was drawn he inquired of Bates whether it was customary to so con-

tract and whether Rieger could be his agent and repre-
sent other people, and Bates replied that under the condi-
tions of this transaction it was all right to do so. Rieger
admitted that he heard Brandt's statement on the stand as
to his question to Bates and that such question was asked.
His version of Bates' answer is, however, that the latter
replied, "You are the seller; it is your business." These
facts clearly indicate not only that Brandt did not consider
the relationship of principal and agent to have been dis-
solved at the time of the execution of the contract in ques-
tion but that Rieger did not intend that he should so con-
sider it. Under those circumstances it was Rieger's duty
to disclose to Brandt the transactions that had taken place
both as to Harris and Reeves and as to the Catholic Sisters.
Not having done so, he is not entitled to a decree for spe-
cific performance of his contract to purchase the land for
himself.

It is also contended that the court erred in its rulings
on the admission of testimony. The testimony of Cooke,
Peabody and Meyers was objected to because it was not
binding upon Rieger, who had the sale of the property.
The evidence was admitted subject to the requirement laid
on appellees' counsel that they connect up the testimony to
show the relationship existing between Cooke and Rieger in
the transaction. We are of the opinion that the record does
so show. Cooke admits in his testimony that the fees in
the Harris and Reeves deal were to be split three ways,—
he to have one-third, Rieger one-third, and Peabody and
Meyers, and those with them, the balance. Peabody testi-
fied that she met Rieger on February 25, 1925, and that
Cooke introduced her to him as an acreage man. Meyers
testified that Rieger was so introduced to her by Cooke.
Reeves testified that Cooke was acting as Rieger's agent.
We are of the opinion that the evidence is sufficient to con-
nect up the testimony as required by the chancellor, and
the court did not err in permitting it to remain in the rec-

ord.   Moreover, the abstract does not disclose a motion on the part of appellant's counsel at the close of the testimony to strike this evidence.   From an examination of this entire record we are of the opinion that the court did not err in its findings or rulings of law.

It seems apparent in reading the abstract that Rieger, by reason of the increase in the value of this property, sought to substitute himself as purchaser while there was pending before him an opportunity to sell the property at a price in advance of that named in the contract.   Under such facts his contract was null and void when executed, and the chancellor was right in removing it as a cloud upon the title of the appellees.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*