**Pearl E. Sams and Mina D. Sams, Appellees, v.
R. E. Rigg, Appellant.**

**Gen. No. 9,670.**

Opinion filed October 31, 1949. Released for publication November 28, 1949.

W. P. CUTHBERTSON, of Bunker Hill, and RINAKER, SMITH & HEBRON, of Carlinville, for appellant.

HEMPHILL & KELSEY, of Carlinville, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The appellee, Pearl E. Sams, a joint owner with his wife, Mina D. Sams, in real estate located in Bunker Hill, Illinois, on April 5, 1948, contacted the appellant, R. E. Rigg, a licensed real estate broker, and listed with him their property for sale for $1,500 or more, and agreed upon a commission of 5 per cent of the sale price. That same evening R. E. Rigg brought a Mr. Everett Andrews and his wife to the home where Mr. and Mrs. Sams were staying and a written contract was entered into, whereby Mr. and Mrs. Andrews agreed to buy and Mr. and Mrs. Sams agreed to sell the property for the sum of $1,500, and $50 earnest money was delivered to Rigg, together with the abstract of title covering the premises, which Rigg was to have brought up to date. A few days later the abstract, having been completed, was delivered by Sams and Rigg to Andrews, who told them he wanted to have the abstract looked over and that he would be able to close the deal within three or four days.

Two weeks later Sams inquired from Rigg about closing the deal and was informed that Andrews had not yet received his insurance money for tornado damage to his own property, but as soon as he received it the deal would be closed.

27

About the middle of April Andrews told Mr. Rigg any time that he could make a profit to go ahead and sell the property for which he had not as yet completed the deal, but that he was to receive $75 out of the deal, the return of his $50 earnest money and cancellation of some indebtedness that he owed to Rigg.

Later on Charles A. Musgrove inspected the premises with Mr. Rigg, and Rigg asked $1,800 for the premises and asked for a deposit of $125 as down payment. The money was given to Rigg and Musgrove received a receipt from Rigg as follows; "Received $125.00 as earnest money to buy out option on Sams property. Balance due $1,675.00 when completed."

On May 6, Mr. and Mrs. Sams met Rigg and JUDGE W. P. CUTHBERTSON in Bunker Hill pursuant to word left with a neighbor of Sams to meet Rigg there. Neither Andrews nor Musgrove was present at the time. When asked why Andrews was not present Rigg stated to those present that he did not sell the premises to Andrews, but to Musgrove and that he had received $1,500 for the premises from Musgrove. When asked about the earnest money that he had received Rigg stated that he had given it back to Andrews because he was a poor man with a lot of children. When asked by JUDGE CUTHBERTSON if he had received the contract from Andrews, Rigg stated that he had the contract. A deed was then prepared and was signed by the Sams conveying the property to the Musgroves, and they received from Rigg the sum of $1,381.25, based on a sale price of $1,500, less commission, taxes, deed expense and federal revenue stamps. The federal revenue stamps were charged at $1.65, indicating a sale price of $1,500. Rigg stated that he would mail Sams a statement of account, but did not do so, and a week later Sams obtained a statement at Rigg's office. At that time Sams stated that the Andrews contract had better be destroyed as CUTHBERTSON said

28

that it would cause a lot of trouble, and Rigg then destroyed it. Sams was unable to find his copy of the contract.

Andrews received back his earnest money plus $75, the remaining $175 being retained by Rigg to cover an indebtedness of Andrews to Rigg. Rigg charged Andrews no commission on the second deal.

The appellees, Pearl E. Sams and Mina D. Sams, later filed a suit against the defendant R. E. Rigg. The complaint contained two counts, the first of which charged the employment of Rigg to sell their premises in Bunker Hill, Illinois, and the same was sold to Charles A. Musgrove for $1,800, that the defendant accounted to the plaintiff a sale on the basis of $1,500 only, and prayed judgment against the defendant for $375, being the difference between the sale price plus a return of $75 commission charged.

The second count of the complaint based on fraud and deceit alleged the ownership of the property in the appellees and that the same was sold to Charles A. Musgrove for $1,800; that the appellant represented to the appellees that it had been sold to Musgrove for $1,500; that such statements were false; that such statements were made with intent of deceiving and defrauding the plaintiffs and that in reliance thereon the appellee had deeded the property to the Musgroves. The count further charges that as a matter of fact the property was sold for $1,800, and the appellant Rigg received a secret profit of $300 for which he did not account and for which he is liable to the appellees in the amount of the secret profit, together with the return of the $75 commission charged by him.

The case was tried by the court without a jury and the court found the issues in favor of the plaintiffs and entered judgment against R. E. Rigg for $375 and costs of suit.

The case comes to this court on appeal from the judgment entered by the circuit court of Macoupin county.

The only question presented by the facts in this case is—did Rigg, the agent for Sams, act in good faith in his dealings with his principal despite the contention of the appellant that he had terminated his employment by the appellee and was at liberty to act for Andrews, the purchaser, in disposing of his interest?

To answer the question we must test his actions under the recognized rules governing principal and agent relationships. The Illinois courts have repeatedly stated the rule as laid down in *Lerk v. McCabe,* 349 Ill. 348, on pages 360 and 361:

"The relation of principal and agent is one of trust and confidence, and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. The rule is the same no matter how large or how small the commission paid may be or whether the agent is a mere volunteer at a nominal consideration. (*Perry v. Engel,* 296 Ill. 549.) An agent acting for the purchaser of land, whether by appointment or as a volunteer, must see that he meets fairly and squarely the responsibility of his position and does not take any advantage, either for his own gain or to the injury of the person whom he represents. (*Salsbury v. Ware,* 183 Ill. 505.) The rule is well established in equity that the relation existing between principal and agent for the purchase or sale of property is a fiduciary one, and the agent in the exercise of good faith is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. (*Reiger v. Brandt,* 329 Ill. 21.) An agent must not put himself, during the continuance of his agency, in a posi-

tion adverse to that of his principal. To the latter belongs the exercise of all the skill, ability and industry of the agent.'' This case was cited with approval in the late case of *Olson v. Eulette,* 332 Ill. App. 178.

█ Applying the foregoing rules to the facts in this case we must necessarily say that this case presents a state of facts clearly showing that the appellant here did not act in good faith. He did not disclose to his principal all matters coming to his attention or knowledge during the course of the transaction which pertained to the subject matter of the agency. He did not disclose the price the ultimate purchaser paid for the property. On the contrary, he furnished to the appellee a statement showing that the purchase price was $1,500, which was less by $300 than the price actually received. He charged $1.65 for revenue stamps, which indicated and represented that the purchase price was $1,500 and not the real purchase price. We can conceive of no more flagrant violation of a duty to disclose all facts and circumstances which falls upon an agent in dealing with his principal.

The appellant did business secretly with a purchaser who paid more for the property than was disclosed to his principal. In addition he made a profit for the original purchaser from which profit he collected an indebtedness due him from that purchaser. All of which facts were part of the transaction and none of which were disclosed to the principal. The very subterfuges used by appellant to conceal the true facts of the transaction from his principal stamps the actions of the appellant with the stigma of fraud and violation of a trust for which he should not profit.

█ An agent cannot take any advantage of his position to speculate to the injury of his principal, and all profits and advantages gained in the transaction of the agent belong to the principal. *Perry v.*

31

*Engel,* 296 Ill. 549. Under the relation of the parties here, appellees had a right to all the benefits and advantages of the transaction, being the sum of $300 not accounted for.

██ Appellant raises the point that having procured a purchaser for the sum of $1,500, his employment ceased, and he was free to become the agent of Andrews, but the evidence clearly shows that he not only did not sell the property to Andrews, but, by his own statement to W. P. CUTHBERTSON in the presence of Sams, he did sell the premises to Musgrove. Appellant also furnished a statement to appellees a week after the deal was closed showing the sale at $1,500, and the various disbursements based on that figure, the same being signed "R. E. Rigg, agent for Seller." As this statement was furnished to the appellee it indicates that Sams was the seller and not Andrews, as contended by the appellant.

██ The clear preponderance of the evidence is against appellant's contention that he had terminated his employment by Sams and became the agent of Andrews. On the contrary, the evidence proves that he did act as the agent for Sams throughout the entire transaction, and did not disclose to Sams, his principal, the transaction as it had taken place both as to Andrews and Musgrove. Not having done so he is not entitled to the profit of $300. An agent cannot terminate an agency for one purpose and recognize it for another. *Rieger v. Brandt,* 329 Ill. 21.

Appellant further contends that he is entitled to the sum of $75 commission, which he claims to have earned as a 5 per cent commission on a sale price of $1,500, and cites the case of *Fox v. Ryan,* 240 Ill. 391, in which case there was no question raised as to any violation of duty upon the part of the broker, and the rule laid down in that case is not applicable to the instant case.

■ The rule governing the question of compensation in cases where an agent is unfaithful to his trust, is laid down in the case of *Steinmetz v. Kern,* 375 Ill. 616, where the court on page 621 said:

"The course Kern pursued was in gross violation of the duty he owed to Mrs. Steinmetz as her agent. An agent is entitled to compensation only on a due and faithful performance of all his duties to his principal. (*Hafner v. Herron,* 165 Ill. 242.) In the application of this rule it makes no difference whether the result of the agent's conduct is injurious to the principal or not, as the misconduct of the agent affects the contract from considerations of public policy rather than of injury to the principal. (*Sidway v. American Mortgage Co.,* 222 Ill. 270.) Under the facts disclosed by the record, the appellant was not entitled to compensation."

The conduct of the appellant was of such a character as to deprive him of the $300 profit made by him at the expense of his principal, and the claim for $75 as compensation for services rendered by him to the appellee.

For the reasons above stated, the judgment of the circuit court of Macoupin county is affirmed.

*Affirmed.*