JEFFREY ALLEN INDUSTRIES, INC., *et al.*, Plaintiffs-Appellants, v. SHELDON F. GOOD & COMPANY *et al.*, Defendants- Appellees.

First District (2nd Division) No. 86—1746

Opinion filed February 24, 1987.

Gerald M. Rubin, of Skokie, for appellants.

Lurie, Sklar & Simon, Ltd., of Chicago (Mark C. Friedlander, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs-appellants appeal from the circuit court's order striking those portions of plaintiffs' second amended complaint alleging that defendants failed to inform plaintiffs of Thermal Laminating Corporation's (TLC's) offer to purchase plaintiffs' property.

Plaintiff Joan Kulwin (Kulwin) succeeded her husband, after his death, as chief operating officer and stockholder of plaintiff Jeffrey Allen Industries, Inc. (corporation). The corporation's main assets included a small manufacturing business and a commercial building in Evanston, Illinois. Kulwin and the Northern Trust Company were named as co-executors of the estate of Seymour Kulwin. On June 24, 1985, the co-executors entered into an agreement with defendant Sheldon F. Good & Company (Sheldon, Company) and Sheldon F. Good, individually, granting the defendants an exclusive right to sell the property owned by the corporation in Evanston. The agreement provided for a listing price of $365,000 and a broker's commission of 6% on the first $50,000 and 5% on the balance of the sales price if they procured a purchaser on the property. However, if a cooperating broker secured the purchaser, the commission would be divided in half between defendants and the cooperating broker. In addition, Sheldon, Company would receive reimbursement of advertising expenses not to exceed $5,000. On July 10, 1985, Northern Trust Company withdrew as co-executor and all of the stock of the plaintiff corporation was transferred to the plaintiff Kulwin.

The complaint alleged that Sheldon, Company arranged for the sale of the property to J.W. Collier. On August 21, 1985, Sheldon Good telephoned Kulwin concerning an offer for her property, and a meeting took place at the office of Kulwin's attorney, Phillip Grossman, at 4:30 p.m. of the same day. Good presented to Kulwin a contract signed by J.W. Collier for an offered purchase price of $335,000. The next day, Good informed Kulwin that J.W. Collier had accepted her counteroffer. The real estate contract provided for a purchase price of $350,000, earnest money of $3,500, a down payment of $97,500 including earnest money and monthly payments at an interest rate of 11% on a 30-year amortization schedule, with the final payment due five years from the closing date. At the closing, Sheldon, Company received a full broker's commission of $18,000.

In a motion to dismiss, all well-pleaded facts contained within the complaint must be accepted as admitted and true. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 54, 391 N.E.2d 479.) All reasonable inferences which can be fairly drawn from the facts alleged must also be considered as true. (73 Ill. App. 3d 51, 54, 391

N.E.2d 479.) It is error to dismiss a cause of action on the pleadings unless it clearly appears that plaintiff cannot recover under any set of facts which can be proved true under the pleadings. *Cirafici v. Goffen* (1980), 85 Ill. App. 3d 1102, 1103, 407 N.E.2d 633.

■ The relationship between principal and agent for the purchase or sale of property is a fiduciary one, and the agent in the exercise of good faith must make known to his principal all material facts within his knowledge which in any way affect the transaction and the subject matter of his agency. (*Lerk v. McCabe* (1932), 349 Ill. 348, 360-61, 182 N.E. 388; *Rieger v. Brandt* (1928), 329 Ill. 21, 27, 160 N.E. 130; *Moehling v. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E. 2d 100.) Material facts are those facts which the agent should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. 20 Ill. 2d 255, 267.

■ ■ If a party employs an agent to make a sale of land, he is entitled to all the skill, ability, and industry of such agent to make the sale on the best terms that can be had. (*Lerk v. McCabe* (1932), 349 Ill. 348, 361, 182 N.E. 388.) An agent cannot deal for his own advantage with things to be sold because of his confidential relationship with his principal and because of his duty to disclose to his principal every fact, circumstance, or advantage in relation to a sale which may come to his knowledge. 349 Ill. 348, 361, 182 N.E. 388.

The stricken allegations contained in the second amended complaint asserted that defendants breached their fiduciary duty by failing to inform plaintiffs of facts material to the sale of plaintiffs' property. Plaintiffs allege that TLC expressed an interest in plaintiffs' property after inspecting it several times in defendants' presence. Specifically, plaintiffs allege that on August 16, 1985, after the third inspection of the property, TLC's president, Maurice Leviton, advised defendants' showing broker, Scott Elman, that he was preparing an all-cash offer for plaintiffs' property. On August 22, 1985, TLC's offer was presented to defendants for $350,000 in cash. Defendants rejected the offer because plaintiffs had already accepted J.W. Collier's offer on August 21, 1985.

Plaintiffs further allege that defendants never informed plaintiffs of TLC's visits to the subject property or of TLC's statements that they were preparing a cash offer for the property. Defendants do not deny that they failed to inform plaintiffs of TLC's interest in plaintiffs' property; rather, they claim that as real estate brokers they had no duty to "report to a seller each and every speculative conversation which [they] had with a prospective purchaser regarding an offer

which the purchaser says that he may make in the indeterminate future."

We conclude that a purchaser's expressions of interest in property to be sold and his statements that he is preparing an offer for said property are material facts which a real estate broker has a duty to convey to his client. It is evident that plaintiffs would have been in an improved position to gain a better price or more favorable terms had they known that there was more than one purchaser interested in their property. Plaintiffs would have benefited from the heightened demand for their property by allowing each prospective purchaser to compete against the other for plaintiffs' property. In fact, TLC's offer included more favorable terms than the contract made with the ultimate purchaser, J.W. Collier. Collier's offer called for a price of $350,000, a cash down payment of $97,500 and monthly payments at an interest rate of 11% on a 30-year amortization schedule with the final payment due five years from the closing date. While TLC's offer was also for a sale price of $350,000, it was an all-cash deal without any seller participating financing. It is possible that plaintiffs would have found TLC's cash offer to have been more favorable than Collier's. In any event, defendants had a duty to inform the seller of all facts that might influence him in accepting or rejecting the offer. (*Moehling v. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 267, 170 N.E.2d 100.) It cannot be said that plaintiffs would not have been influenced by TLC's offer in accepting or rejecting Collier's offer. Therefore, we hold that the dismissed counts sufficiently allege the breach of a fiduciary duty to plaintiffs by failing to disclose material facts to them regarding the sale of their property.

Plaintiffs allege, additionally, that defendants' failure to inform plaintiffs of TLC's offer was an attempt to make personal gain by receiving a higher commission. Such conduct, if proven, is strictly prohibited in this State because it violates an agent's duty of honesty and loyalty toward his principal. (*Blanchard v. Lewis* (1953), 414 Ill. 515, 524, 112 N.E.2d 167.) This obligation toward a principal prohibits an agent from dealing independently of the interests of his principal to his personal gain in the subject matter of the agency, on the ground that such activities will necessarily tempt that agent to abandon the interests of this principal in favor of his own interests. (414 Ill. 515, 524, 112 N.E.2d 167.) In fact, an agent who deals independently of the interests of his principal breaches his fiduciary duty and is therefore barred from any recovery for his services. (414 Ill. 515, 524, 112 N.E.2d 167; see R. Kratovil & R. Werner, Real Estate Law 118 (8th ed. 1983) (when a broker breaches his duties toward his

employer he will, in almost every case, lose his commission).) In this instance, defendants allegedly received an $18,000 commission from the sale of plaintiffs' property to J.W. Collier, a client brought in by defendants. Under the listing agreement, defendants would have received only one-half of that commission or $9,000 and advertising expenses up to $5,000 if the property were sold to TLC, a prospective purchaser not brought in by defendants.

The circuit court erred in dismissing the stricken allegations, and the cause is reversed and remanded with directions to reinstate the same consistent with this order.

Reversed and remanded with directions.

SCARIANO, P.J., and HARTMAN, J., concur.