ANDREW LETSOS, Plaintiff-Appellant, v. CENTURY 21-NEW WEST REALTY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—96—0075

Opinion filed December 27, 1996.

Robert A. Habib, of Chicago, for appellant.

Sharon A. Wildey, of Chicago, for appellee Alex Brusha.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Adria East Mossing, and Christine L. Olson, of counsel), for appellee Century 21-New West Realty.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Andrew Letsos, contracted to sell property to his real estate broker, defendant Alex Brusha, after listing the property for sale with Brusha for $1\,1/2$ years without success. After executing the contract, but before closing, Brusha found a buyer for himself and resold the property for a profit. Letsos sued Brusha and Brusha's alleged employer, defendant Century 21-New West Realty (Century 21). The circuit court granted summary judgment in favor of both defendants. Letsos alleges both defendants breached their fiduciary duties to him by failing to disclose that they had found a buyer, and that Century 21 is vicariously liable for Brusha's actions.

The issues identified by Letsos for appeal include whether (1) a real estate brokerage company, and a real estate salesman who works for the company, owed a fiduciary duty to the owner of real property after the expiration of a listing agreement between the parties; (2) a principal-agency relationship existed between the real estate broker-

age company and the real estate salesman, rendering the company vicariously liable for the acts of the salesman; and (3) the company and the salesman breached a fiduciary duty to the owner when the salesman purchased property from the owner and immediately resold it for a profit, without telling the owner before the closing that he had found a willing buyer.

The facts of this case, construed most favorably to Letsos, and most strictly against Brusha and Century 21 (*Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990)), are set forth in the following paragraphs.

On June 15, 1990, Letsos, who owned several parcels of property, entered into a three-month listing agreement with New West Associates, Inc. (New West), giving New West exclusive authority, over a three-month period, to sell Letsos' property located at 931 South Bell Street (Bell property) for $229,000, for which Letsos agreed to pay a 6% commission. After the listing agreement expired, Letsos entered into another contract with New West, which by then had been renamed New West Realty, Inc., doing business as Century 21-New West Realty.

Each time the listing agreement expired, Letsos signed a new agreement with Century 21. Between June 15, 1990, and September 16, 1992, Letsos entered into eight consecutive listing agreements for the Bell property and, when Century 21 could not find a buyer, the asking price was lowered several times. In the final listing agreement, signed on September 16, 1992, Letsos set the asking price at $129,000.

Letsos' contact person at Century 21 was Brusha, a real estate salesman licensed by the State of Illinois who worked for New West and Century 21 since 1988. An employment contract Brusha signed with Century 21 outlined his obligations as a salesperson. An extensive rider to the contract stated that Brusha would be considered an independent contractor. It also provided that Brusha would receive a commission when Brusha closed a sale of property. All commissions would be payable to Century 21, which would keep a portion of the commissions Brusha earned. Brusha would be compensated only from the commissions earned from selling property, but did not receive a salary. Century 21 also allowed Brusha to use its office space and a telephone free of charge. Century 21 would not monitor Brusha's daily activities or require him to work a specific number of hours.

Letsos first spoke with Brusha in the summer of 1990, after calling a telephone number he saw on a sign in the front of a Century 21 office. He met with Brusha to see if Brusha could help him sell some

property he owned. They walked through several buildings owned by Letsos and calculated selling prices. Letsos showed Brusha the Bell property, which consisted of a two-flat that Letsos recently finished renovating. Brusha agreed to try to find a buyer, and a listing agreement was executed.

Brusha had exclusive authority to sell Letsos' Bell property pursuant to the multiple listing agreements in effect from 1990 to 1992. Each time a listing agreement expired, Brusha assured Letsos that he found a potential buyer, and convinced him to sign a new agreement. The last listing agreement expired on December 15, 1992. Letsos could not remember whether Brusha asked him to sign a new agreement, but he planned to sign another contract with Brusha and expected Brusha to continue to act as his representative with regard to the Bell property. Brusha acknowledged that he continued to serve as Letsos' broker after the listing agreement expired.

Soon after the expiration of the last agreement, Brusha sold another parcel of property owned by Letsos. At the closing of that sale, Brusha spoke with Letsos, offering to buy the Bell property for himself for $88,000. Brusha previously had mentioned purchasing the property during casual conversations and believed the Bell property had not been sold because it "didn't show well": the exterior needed to be landscaped and the tenants did not keep their apartments clean. Letsos claimed Brusha told him that, after buying the Bell property, he would spend a year fixing it up and would then sell the property. Brusha acknowledged only that he told Letsos he planned to resell the property after purchasing it.

On March 9, 1993, Letsos and Brusha signed a contract for the sale of the Bell property to Brusha for $92,000, with the closing to take place in two months. The agreement named Century 21 as the listing broker, to whom Letsos would pay a commission that equalled 5% of the purchase price, or $4,600. Brusha would receive a portion of this commission. Century 21 also acted as the escrow agent, holding the initial earnest money paid by Brusha.

Sometime in March 1993, Brusha met Anthony Hernandez through another broker. In May, Brusha and Hernandez contracted for the sale and purchase of the Bell property for $115,000. Brusha was required to obtain title to the property before July 27, 1993, and to make small improvements to the property, which cost several hundred dollars. Brusha denied meeting Hernandez before he signed the March 9, 1993, contract with Letsos.

Letsos and Brusha scheduled their closing for May 10. Brusha delayed the closing several times; according to Letsos, Brusha said he needed more time to obtain a bank loan for the purchase. The closing

between Letsos and Brusha finally occurred in mid-July 1993. Letsos then left for a vacation in Greece. After the closing, Letsos' real estate attorney called Brusha, asking him for money owed Letsos. Brusha told the attorney he was reselling the property. The Brusha-Hernandez closing took place on August 2, 1993, which Letsos' attorney attended.

When he returned from Greece and was told about the subsequent sale to Hernandez, Letsos filed a complaint against Brusha and Century 21, alleging that both defendants breached fiduciary duties owed him by failing to disclose the Brusha sale to Hernandez, and seeking $30,000 in compensatory damages and $50,000 in punitive damages. Century 21 unsuccessfully moved to dismiss the complaint, claiming it owed no fiduciary duty toward Letsos because the listing agreement expired before the parties entered into a contract for the sale of the Bell property. Century 21 and Brusha then filed separate answers to the complaint.

Letsos moved for partial summary judgment, asserting that no party disputed the relevant facts, which showed that Brusha never told Letsos he found a buyer for the property and entered into a second contract for the sale of the property. Letsos alleged that each defendant owed him a fiduciary duty and requested the court to rule as a matter of law that defendants breached this duty by failing to disclose material information.

In response, Century 21 argued that it was not a party to the real estate contract between Brusha and Letsos, did not profit from the sale, did not breach any fiduciary duty because the listing agreement expired, and because the doctrine of equitable conversion gave Brusha equitable title to the property when the parties signed the contract on March 9. In addition, Century 21 brought a cross-motion for summary judgment, asserting that for the reasons stated in its response, the court should rule as a matter of law that Century 21 could not be liable. Alternatively, Century 21 contended that, if Brusha were found liable to Letsos, Brusha worked as an independent contractor and Century 21 therefore should not be liable for his actions. Century 21 later filed a separate motion for summary judgment, where it stated identical allegations.

Brusha also filed a response to Letsos' summary judgment motion. Brusha asserted that Letsos could not prove Hernandez was a prospective buyer before the parties signed the purchase agreement, pointing to his uncontested deposition testimony that he met Hernandez after signing the contract with Letsos. He asserts that he had no duty to disclose information he received after signing the real estate sales contract but before the closing took place.

Letsos twice amended his complaint. Count I of the second amended complaint, filed after his motion for partial summary judgment, alleged that Brusha owed Letsos a fiduciary duty as his broker, which was breached by failing to disclose to Letsos that he found a buyer. Count II alleged that Brusha was an agent for Century 21, Century 21 had a duty to supervise Brusha's actions, and Century 21 breached this duty by allowing Brusha to purchase the property without making any disclosures to Letsos. Letsos requested $27,000 in compensatory damages (the $23,000 profit earned by Letsos on the resale of the Bell property, plus a portion of the $4,600 commission Letsos paid Century 21), and $25,000 in punitive damages.

The circuit court held a hearing to decide the motions. The transcript of the hearing has not been made part of the record but was added as an appendix to Letsos' brief. The transcript itself refers to the court presiding over previous hearings; the record contains no transcripts of hearings and refers to no hearings. In the transcript, the circuit court made no findings, but stated simply that, for the reasons stated best in Century 21's motion, it would grant defendants' motions for summary judgment and deny plaintiff's motion. The court then issued an order in accordance with this ruling. Letsos appeals.

■ Motions for summary judgment may be granted where the pleadings, depositions, exhibits, and affidavits reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Young v. Lemons*, 266 Ill. App. 3d 49, 51, 639 N.E.2d 610 (1994). When determining whether the circuit court properly granted a motion for summary judgment, review is *de novo. Zoeller v. Augustine*, 271 Ill. App. 3d 370, 374, 648 N.E.2d 939 (1995). All evidence is construed in the light most favorable to the nonmoving party and strictly against the moving party. *Gatlin*, 137 Ill. 2d at 293; *Soderlund Brothers, Inc., v. Carrier Corp.*, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1 (1995). Reversal is warranted where review reveals the existence of material issues of fact or erroneous interpretations of law. *Zoeller*, 271 Ill. App. 3d at 374.

# I

Letsos argues that although the listing agreement with Letsos and Century 21 expired in December 1992, the conduct of the parties shows that Century 21 and Brusha continued to act as Letsos' agent with regard to the Bell property. As a result, Letsos contends, both defendants owed him a fiduciary duty. Letsos points out that defendants each received a commission on the sale of the property at

the time of closing. Century 21 insists that its obligations toward Letsos ended in December 1992 with the listing agreement. Furthermore, Century 21 contends that once this listing agreement expired, it could negotiate with Letsos at arm's length and receive a commission on the sale. Century 21 claims it was entitled to the commission pursuant to an employment agreement with Brusha, which allows Century 21 to receive portions of all commissions Brusha receives.

A real estate broker serves as an agent of the owner of property, who bargains or negotiates on behalf of his principal in relation to the purchase or sale of property. *Munjal v. Baird & Warner, Inc.*, 138 Ill. App. 3d 172, 181, 485 N.E.2d 855 (1985); *Plastics & Equipment Sales Co. v. DeSoto, Inc.*, 91 Ill. App. 3d 1011, 1015, 415 N.E.2d 492 (1980). Generally, the terms of a brokerage contract or listing agreement determine the rights and obligations of a broker. *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.*, 235 Ill. App. 3d 896, 905, 601 N.E.2d 810 (1992). A contract employing a real estate broker, however, does not have to be in writing. *In re Estate of Vallerius*, 253 Ill. App. 3d 226, 230, 624 N.E.2d 459 (1993). All that is required is action by the broker and consent by the principal. Consent may be oral, written, or implied by the conduct of the parties. *Walsh v. Fanslow*, 123 Ill. App. 3d 417, 422, 462 N.E.2d 965 (1984).

There was evidence in this case from which a fact finder could determine the existence of an agency relationship with regard to both defendants, even after the expiration of the listing agreement in December 1992. Letsos and Brusha discussed the sale of the Bell property after December, and Brusha continued to represent Letsos in attempting to find a buyer for the property. Letsos stated that after the last listing agreement expired, he expected Brusha to remain his broker and assumed he would renew that agreement at some point. Brusha himself admitted that he remained Letsos' broker after the expiration of the listing agreement. Therefore, although no written agreement existed, the conduct of the parties evidences an intent to continue the owner-broker relationship.

In addition, Century 21 expressly indicated that it considered itself an agent of Letsos by naming itself as a broker in the real estate sales contract between Letsos and Brusha, and by receiving a commission from that sale of the Bell property. The language of the real estate sales contract between Letsos and Brusha contradicts Century 21's statement that it received the commission through Brusha rather than independently from Letsos. The contract names Century 21, not Brusha, as the listing broker and states that the seller must pay the broker a commission of 5% of the sales price. The contract obligated Letsos to pay the commission directly to Century

21, not to Brusha, and made no reference to any agreement between Century 21 and Brusha.

Significantly, if Century 21 were not Letsos' agent, it would not have been entitled to receive a commission from Letsos because absent a contract between a broker and the owner of the property, the latter has no obligation to compensate the broker. *Wilmette Real Estate & Management Co. v. Luvisi*, 172 Ill. App. 3d 232, 236, 526 N.E.2d 477 (1988); *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d 867, 871, 400 N.E.2d 614 (1980). Brusha's deposition testimony reveals that he also received a portion of the commission for his services as broker in the sale to himself. Neither Century 21 nor Brusha can claim the benefits of a principal-agency relationship by receiving a broker's commission and later deny the existence of that relationship. *Rieger v. Brandt*, 329 Ill. 21, 28-29, 160 N.E. 130 (1928) (*Rieger*); *Sams v. Rigg*, 339 Ill. App. 25, 88 N.E.2d 673 (1949).

A fact finder reasonably could conclude that both Century 21 and Brusha acted as agents of Letsos even after the listing agreement expired. If so, they would therefore owe Letsos a fiduciary duty each time the parties contracted for the sale of the Bell property. Summary judgment was improperly entered on this issue, and the cause must be reversed and remanded for trial.

## II

Letsos next contends that Century 21, Brusha's employer, is vicariously liable for Brusha's misconduct. Century 21 counters that it cannot be held liable because Brusha was an independent contractor, rather than an employee, which Letsos disputes, asserting that Brusha acted with the apparent authority of Century 21.

A fact finder could conclude that the conduct of the parties established that Brusha's actions were as an agent of Century 21 despite the independent contractor language contained in his employment agreement. The record can be interpreted to show that Brusha acted with the apparent authority of Century 21, and Century 21, therefore, is liable for the acts of Brusha.

An agency relationship engenders a type of fiduciary affiliation in which the principal has the right to control the conduct of the agent and the agent has the power to act on behalf of the principal. *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595, 630 N.E.2d 940 (1994). Once an agency relationship is found, a fiduciary relationship arises as a matter of law. *State Security*, 258 Ill. App. 3d at 595.

An agent's authority may be actual or apparent; if it is actual, it may be express or implied. *Granite Properties Ltd. Partnership v.*

*Granite Investment Co.*, 220 Ill. App. 3d 711, 713-14, 581 N.E.2d 90 (1991). Apparent authority arises when the principal holds an agent out as possessing the authority to act on its behalf and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523, 622 N.E.2d 788 (1993). The doctrine of apparent authority is based on the notion that if a principal creates the appearance that a party is its agent, it will not be permitted to deny the agency if an innocent third party reasonably relies on the apparent agency and is harmed as a result. *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213, 670 N.E.2d 632 (1996) (*O'Banner*). To prove the existence of apparent authority, the proponent must show: (1) the principal consented to or knowingly acquiesced in the agent's exercise of authority; (2) based on the actions of the principal and agent, the third person reasonably concluded that the party was an agent of the principal; and (3) the third person justifiably relied on the agent's apparent authority to his detriment. *Gilbert*, 156 Ill. 2d at 525; *Wabash Independent Oil Co. v. King & Wills Insurance Agency*, 248 Ill. App. 3d 719, 724, 618 N.E.2d 1214 (1993).

■ Century 21 insists that Brusha cannot be considered its agent because the language of Brusha's employment agreement repeatedly and explicitly referred to him as an independent contractor. Generally, one who engages the services of an independent contractor is not liable for the acts or omissions of that contractor. *Jessee v. Amoco Oil Co.*, 230 Ill. App. 3d 337, 342, 594 N.E.2d 1210 (1992). Whether the parties' relationship is that of principal and agent or owner and independent contractor, however, is a question of fact unless the relationship is so clear that it is indisputable. *Wabash*, 248 Ill. App. 3d at 723. In addition, a party may be both an independent contractor and an agent for another. *Sobel v. Franks*, 261 Ill. App. 3d 670, 679, 633 N.E.2d 820 (1994).

Specific conduct on the part of both Brusha and Century 21 inferentially demonstrated the existence of a principal-agency relationship, despite evidence that the parties intended an independent contractor relationship. Century 21 "consented to or knowingly acquiesced in" Brusha's exercise of authority. Century 21 provided Brusha with an office, telephone, office furniture, and supplies. All listing agreements were in the name of Century 21. Furthermore, Brusha, on behalf of Century 21, persuaded Letsos to enter into these agreements.

Sufficient evidence of the three elements of apparent agency revealed that Century 21 could be considered to have held Brusha out

as an employee and that Letsos reasonably and in good faith could have believed that Brusha was an agent of Century 21, and justifiably relied to his detriment on this belief. Letsos originally became acquainted with Brusha by calling a telephone number he saw on a Century 21 sign outside its offices. All the listing agreements Letsos signed were in the name of Century 21. Brusha worked out of the Century 21 offices. These specific acts of conduct could support a reasonable belief by a fact finder that Brusha was an agent of Century 21. In addition, Letsos could have relied on this appearance of agency to his detriment, in that he believed Century 21 more closely monitored Brusha's activities and had no reason to believe Brusha worked independently of Century 21. Brusha therefore can be considered an agent of Century 21, and Century 21 can be held liable for Brusha's wrongful conduct.

Century 21 misinterprets the *O'Banner* decision when it suggests that the decision requires plaintiffs specifically to allege justifiable reliance in their complaint to recover under an apparent agency theory. In *O'Banner*, the court briefly discussed the doctrine of apparent agency and noted that the doctrine applied when a third party reasonably relies on an apparent agency relationship and is harmed as a result. *O'Banner*, 173 Ill. 2d at 213. The court did not require that plaintiff specifically allege each element of the apparent agency doctrine. In the present case, Letsos pled facts alleging the existence of a principal-agency relationship between Century 21 and Brusha. A fact finder could believe that he subsequently proved this allegation through direct evidence showing the existence of an apparent agency. Summary judgment should not have been entered on this issue and the cause must be reversed and remanded for trial for this reason as well.

### III

Brusha asserts that he owed no duty to disclose his dealings with Hernandez after the parties signed the Letsos contract. Century 21 similarly insists that any fiduciary duty it owed Brusha did not include the duty to disclose.

The fiduciary relationship between a broker and a principal requires full disclosure of all material facts relating to the relevant transaction or affecting the subject matter of the agency. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 385, 432 N.E.2d 849 (1982); *Moehling v. W.E. O'Neil Construction Co.*, 20 Ill. 2d 255, 267, 170 N.E.2d 100 (1960). Facts are considered material if they would likely influence the principal's beliefs regarding the desirability of the transaction. *Jeffrey Allen Industries, Inc. v. Sheldon F. Good &*

*Co.*, 153 Ill. App. 3d 120, 123, 505 N.E.2d 1104 (1987) (*Jeffrey Allen*). One who employs an agent for the sale of land is entitled to all the agent's "skill, ability, and industry" to make the sale on the best possible terms. *Jeffrey Allen*, 153 Ill. App. 3d at 123. An agent owes general duties of good faith, loyalty, and trust. *Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049, 1056, 487 N.E.2d 1098 (1985), *aff'd in part & rev'd in part*, 117 Ill. 2d 67, 77, 510 N.E.2d 840 (1987) (*Martin*).

If a broker, as an agent, enters into a contract with the principal, the same duties of good faith and disclosure of material facts continue. *Martin*, 117 Ill. 2d at 77; *Moehling*, 20 Ill. 2d at 267. Where a fiduciary relationship exists at the time of the transaction and the dominant party (the broker) appears to benefit, the transaction is presumptively fraudulent, which may be rebutted by clear and convincing evidence of good faith, showing that the broker: (1) fully disclosed all relevant information to the principal before entering into the transaction; (2) paid adequate consideration; and (3) provided competent and independent advice to the principal. *Glass v. Burkett*, 64 Ill. App. 3d 676, 680-81, 381 N.E.2d 821 (1978) (*Glass*).

Where the broker learns of another buyer before entering into the contract, the broker must inform the principal of the buyer's offer. *Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co.*, 160 F.2d 721, 725 (7th Cir. 1947) (*Pittsburgh*); *Rieger*, 329 Ill. at 28; *Glass*, 64 Ill. App. 3d at 681. In *Rieger*, defendant, a broker, offered to buy plaintiff's property and informed plaintiff that other potential buyers were willing to pay the same amount. The broker did not mention, however, that at least one buyer was willing to pay a higher price. Instead, the broker resold the property to the other buyer at the higher price, earning a profit. 329 Ill. at 26-27. The supreme court held that defendant breached his duty by failing to disclose the better offer to plaintiff. 329 Ill. at 29.

The court in *Rieger* also noted that the defendant broker himself deemed the agency as continuing where, as in the case at bar, he received a broker's commission for the sale, after the contract to purchase for himself (and others) was executed, the court observing that "[a]n agent cannot terminate the agency for one purpose and recognize it for another." 329 Ill. at 28. To the same effect is *Sams v. Rigg*, 339 Ill. App. 25, 88 N.E.2d 673 (1949) (*Sams*). There, the appellate court affirmed a circuit court decision that held that the defendant broker who failed to disclose the sale of the principal's property at a price higher than that reported could not claim the agency terminated where he received a commission for broker's services rendered thereafter, among other reasons. Similarly, in *Glass*, the

defendant broker was held to have breached his duty to plaintiffs by failing to inform them of a better offer before purchasing the property from plaintiffs. *Glass*, 64 Ill. App. 3d at 682.

Century 21 contends that after Brusha and Letsos executed the real estate sales contract, any duty to disclose other buyers terminated because the contract gave Brusha equitable title to the property, allowing him to retain or to sell his interest in the property as he wished.

■ The doctrine of equitable conversion to which Century 21 refers provides that when the owner of real property enters into a valid and enforceable sale of that property, he continues to hold legal title, but in trust for the buyer. The buyer becomes the equitable owner of the property at the time of the contract. The doctrine will not be applied, however, where it interferes with other equitable considerations or violates the intentions of the parties. *Eade v. Brownlee*, 29 Ill. 2d 214, 217, 193 N.E.2d 786 (1963); *Hartman v. Hartman*, 11 Ill. App. 3d 524, 527-28, 297 N.E.2d 199 (1973). Similarly, the doctrine does not apply if it would circumvent or avoid established principles of law and public policy. *Chandler v. Chandler*, 64 Ill. App. 3d 97, 99, 381 N.E.2d 37 (1978).

■ Application of the doctrine of equitable conversion here would violate the intentions of the parties. There was evidence that Letsos still considered Brusha as his broker even after he contracted to sell the property to Brusha, a fact Brusha effectively concedes, as does Century 21, in having pursued their broker's commissions of $4,600 through July 1993, the date of closing. The contract of sale between Brusha and Hernandez was executed on May 29, 1993, a time during which Brusha was still Letsos' broker. *Rieger*, 329 Ill. 21, 160 N.E. 130; *Sams*, 339 Ill. App. 25, 88 N.E.2d 673; *Glass*, 64 Ill. App. 3d 676, 381 N.E.2d 821.

Brusha's relationship to Letsos, principal-agent, maintained their fiduciary relationship requiring full disclosure. *Sawyer Realty*, 89 Ill. 2d at 385. He bore the duty of good faith and loyalty towards Letsos, which prohibited him from discharging duties of his position in such a manner as to make a secret profit for himself. *Martin*, 117 Ill. 2d at 77. Because of Brusha's confidential relationship to Letsos, his duty was to disclose to his principal every fact, circumstance, or advantage in relation to the sale that may have come to his knowledge. *Jeffrey Allen*, 153 Ill. App. 3d at 123.

A broker can neither purchase from, nor sell to, his principal unless the latter expressly assents thereto or, with full knowledge of all the facts and circumstances, acquiesces in such transaction. Even when the principal gives his assent to a purchase or sale by the bro-

ker, the latter's actions throughout must be characterized by the utmost good faith. *Glass*, 64 Ill. App. 3d 676, 381 N.E.2d 821. In the event of any litigation between him and his employer, the burden is upon the broker to prove both the permission and the exemplary manner in which he availed himself of it, since it is inconsistent for one to act as principal in his own behalf at the same time he is duty bound to act as the agent of another. *Spindler v. Krieger*, 16 Ill. App. 2d 131, 147 N.E.2d 457 (1958); *Pittsburgh*, 160 F.2d 721; *Rieger*, 329 Ill. 21, 160 N.E. 130.

Defendants in the case *sub judice* never informed Letsos that Hernandez was willing to pay $115,000 for the property and that Brusha had signed a contract to sell his interest in the property for $115,000. Brusha's fiduciary duty required him to disclose to Letsos all material facts, such as his contract with Hernandez. Brusha's fiduciary duty further required him not to deal for his own advantage, and make a profit of $23,000, undisclosed to Letsos.

## IV

With respect to remedy, an agent is entitled to compensation only upon faithful performance of all his duties to the principal. The misconduct of the agent affects the contract of agency from considerations of public policy rather than of injury to principal. *Steinmetz v. Kern*, 375 Ill. 616, 621, 32 N.E.2d 151 (1941). One who breaches fiduciary duties has no entitlement to compensation during a willful or deliberate course of conduct, adverse to the principal's interests. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 413 N.E.2d 1299 (1980).

In the instant case, the defendants-brokers may be found to have breached their fiduciary duties owed to Letsos, through their secret dealings with Hernandez. They may be required to return the $4,600 broker's fee they received from Letsos for obtaining a sale of property to themselves as a penalty for their willful violation of their fiduciary duty. *Martin*, 117 Ill. 2d 67, 510 N.E.2d 840. Further, Brusha, if found to have breached his fiduciary duty to Letsos, made a profit of $23,000. The breach could be deemed willful and Letsos may be entitled to the return of the profits made in the sale, $23,000.

Under common-law principles of *respondeat superior*, a principal is liable for deceit of its agent, if committed in the very business the agent was appointed to carry out, even where the agent's specific conduct was carried out without knowledge of the principal. *Commodities Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 (7th Cir. 1981). One who puts a servant or other agent in a position that enables the agent, while apparently acting within his authority,

to commit fraud upon third persons also is subject to liability to such third persons for fraud. *Bachmeier v. Bank of Ravenswood*, 663 F. Supp. 1207 (N.D. Ill. 1987).

Brusha could be found to have been Century 21's salesman; the commission he secured was payable to Century 21; and Century 21 received the $4,600 commission through Brusha's purchase of the property from Letsos. Century 21 also received a $1,053 commission in Brusha's sale of the property to Hernandez. It was shown as the broker on the March 9, 1993, contract and collected the commission. It too, could be found to have breached its fiduciary duty to Letsos in not disclosing the existence of the Hernandez contract.

Summary judgment in this case was erroneously granted to Brusha and Century 21. Material questions of fact abound. For the same reasons, summary judgment could not be entered in Letsos' favor. This case must be and is reversed and remanded for trial.

Reversed and remanded for trial.

DiVITO and BURKE, JJ., concur.