JO ANN KIRKRUFF *et al.*, as Trustees of the Helen B. Armstrong Family Trust, Plaintiffs-Appellees and Cross-Appellants, v. TAD WISEGARVER, d/b/a Tad Wisegarver Real Estate, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—97—0667

Argued May 20, 1998.—Opinion filed June 26, 1998.

828

Michael J. Tague (argued), of Flynn, Palmer & Tague, of Champaign, for appellant.

James A. Martinkus (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 1994, plaintiffs, Jo Ann Kirkruff and James L. Armstrong, as trustees of the Helen B. Armstrong Family Trust (the Trust), filed suit against defendant, Tad Wisegarver, alleging, *inter*

*alia,* that Wisegarver breached his fiduciary duty (count I) and violated the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 1994)) (count III) in his capacity as their real estate broker. (The trial court later granted plaintiffs' motion to voluntarily dismiss the remaining three counts.) In February 1997, the trial court contemporaneously conducted a jury trial as to count I and a bench trial as to count III. A jury subsequently returned a verdict in plaintiffs' favor on count I and awarded $58,200 in damages. In June 1997, the trial court found as a matter of law that damages totalled $90,324.74 (Wisegarver's stipulated net profits) and entered judgment in that amount on count I. The court also entered judgment in Wisegarver's favor on count III.

Wisegarver appeals, arguing that the trial court erred by (1) denying his motions for directed verdict and judgment *n.o.v.* because the evidence failed to show that (a) a fiduciary relationship existed, (b) Wisegarver breached his fiduciary duty, or (c) Wisegarver's breach of fiduciary duty proximately caused plaintiff's injury; and (2) entering judgment in plaintiffs' favor on count I in an amount exceeding the jury's award. Plaintiffs cross-appeal, arguing that the court's finding that Wisegarver did not violate the Act was against the manifest weight of the evidence. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The material in this section is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.

## II. ANALYSIS

### A. The Trial Court's Denial of Wisegarver's Motions for Directed Verdict and Judgment *N.O.V.*

Wisegarver first argues that the trial court erred by denying his motions for directed verdict and judgment *n.o.v.* because the evidence did not show that (1) a fiduciary relationship existed between Wisegarver and plaintiffs; (2) Wisegarver breached his fiduciary duty; or (3) Wisegarver's breach of his fiduciary duty proximately caused plaintiffs' injury. We disagree.

#### 1. *Standard of Review*

■ A trial court should not grant a motion for directed verdict or judgment *n.o.v.* unless "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504,

513-14 (1967); see *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 353, 603 N.E.2d 449, 454 (1992).

## 2. *Existence of a Fiduciary Relationship*

Specifically, Wisegarver contends that the evidence did not show that a fiduciary relationship existed and, instead, the acts of the parties constituted nothing more than the sharing of information to develop the terms of some possible agreement. We disagree.

■ A contract to employ a real estate broker need not be in writing. *In re Estate of Vallerius*, 253 Ill. App. 3d 226, 230, 624 N.E.2d 459, 462 (1993). All that is required is action by the broker and consent by the principal. Such consent may be oral, written, or implied by the conduct of the parties. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1063, 675 N.E.2d 217, 223 (1996). Whether an agency relationship exists may be established by circumstantial evidence, including the situation of the parties, their acts, and other relevant circumstances. The existence of an agency relationship constitutes a question of fact for the trier of fact. *Matthews Roofing Co. v. Community Bank & Trust Co.*, 194 Ill. App. 3d 200, 206, 550 N.E.2d 1189, 1193 (1990). A plaintiff must prove the existence of an agency relationship by clear and convincing evidence. See *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595, 630 N.E.2d 940, 945 (1994).

A real estate broker serves as an agent of a property owner, and an agency relationship engenders a type of fiduciary affiliation in which the principal has the right to control the agent's conduct, and the agent has the power to act on the principal's behalf. Once an agency relationship is found, a fiduciary relationship arises as a matter of law. *Letsos*, 285 Ill. App. 3d at 1064, 675 N.E.2d at 223-24.

■ Initially, we note that Wisegarver correctly points out that the supreme court in *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 44-45, 643 N.E.2d 734, 740 (1994) (*Martin II*), quoting *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 78, 510 N.E.2d 840, 844-45 (1987) (*Martin I*), quoting Restatement (Second) of Agency § 389, Comment *b* (1958), adopted the *general* rule that "an 'agent is subject to no fiduciary duty in making the agreement by which he becomes [an] agent.' " However, he fails to point out that the supreme court also adopted the following exception to the general rule:

> " '[W]e are unwilling to conclude, as a matter of law, that a fiduciary duty can never be imposed upon a prospective agent prior to the formal creation of an agency relationship. Thus, while the general rule governing preagency [contacts] does not require disclosure of the terms of a prospective agent's compensation, we believe that facts could be established which would support imposition of a fi-

duciary duty upon a prospective agent applicable to preagency [contacts].' " *Martin II*, 163 Ill. 2d at 45, 643 N.E.2d at 740, quoting *Martin I*, 117 Ill. 2d at 78-79, 510 N.E.2d at 845, citing Restatement (Second) of Agency § 390, Comment *e* (1958). The court also noted that "[a]ll that is required is that the creation of the agency relationship involve peculiar trust and confidence, with reliance by the principal on the fair dealing by the agent." (Emphasis omitted.) *Martin II*, 163 Ill. 2d at 47, 643 N.E.2d at 741.

■ The evidence here showed that Kirkruff responded to Wisegarver's advertisement in which he held himself out as a specialist in "land development" and "subdivision marketing and sales." Kirkruff testified that she initially contacted Wisegarver to be her agent in developing the property. Wisegarver testified that he holds himself out as a specialist in the marketing and sales of development land, and during his first conversation with Kirkruff, she told him she was interested in Wisegarver marketing the property and determining whether it could be developed. Patricia Kaisner, plaintiff's expert, opined that a fiduciary relationship existed between Wisegarver and Kirkruff when Kirkruff initially contacted Wisegarver to seek his advice and opinion regarding the property.

Kirkruff also testified that between the time Wisegarver told her it was not economically feasible to develop the land and the date she entered into the agreement to sell the land to him, she asked him to sell the property for her based upon his representations, and they agreed upon a commission of "[a]round 6 percent." Further, Wisegarver effectively conceded that he was Kirkruff's agent when he testified that he thought the property could have sold for $2,500 per acre, "but *in the situation between [him and Kirkruff]*, if [he] were to market the property, [he] *would charge a commission* which basically off of that would be the same net to [Kirkruff]." (Emphasis added.) See *Letsos*, 285 Ill. App. 3d at 1068, 675 N.E.2d at 226 (real estate broker effectively conceded that he was still property owner's broker by having pursued his broker's commissions after having entered into the contract of sale between himself and the owner). Kirkruff stated that during the period from January 1993 through April 30, 1993 (when the parties closed the sale), she trusted Wisegarver and believed he was working for her as her real estate agent. Moreover, Kaisner opined that even after Wisegarver informed Kirkruff of his interest in purchasing the property, his fiduciary duty to Kirkruff continued. See *Letsos*, 285 Ill. App. 3d at 1068, 675 N.E.2d at 226-27 (fiduciary duty continued after property owner contracted to sell property to broker).

Based on our review of the record in this case, we conclude that the evidence supports the jury's verdict under the *Pedrick* standard.

### 3. *Breach of Fiduciary Duty*

Wisegarver also contends that the evidence failed to show that he breached his fiduciary duty. We disagree.

■ The fiduciary relationship between a broker and a principal requires full disclosure of all relevant facts relating to the transaction or affecting the subject matter of the agency. An agent owes general duties of good faith, loyalty, and trust to his or her principal. If a broker, as an agent, enters into a contract with the principal, the same duties of good faith and disclosure continue. Where a fiduciary relationship exists at the time of the transaction and the broker appears to benefit, the transaction is presumptively fraudulent, which may be rebutted by clear and convincing evidence of good faith, showing that the broker did the following: (1) fully disclosed all relevant information to the principal before entering into the transaction; (2) paid adequate consideration; and (3) provided competent and independent advice to the principal. *Letsos*, 285 Ill. App. 3d at 1066-67, 675 N.E.2d at 225-26. Further, a broker cannot purchase from a principal unless the principal expressly assents thereto or, with full knowledge of all the facts and circumstances, acquiesces in such a transaction. Even if the principal gives her assent to a purchase by the broker, the broker's actions throughout must be characterized by the utmost good faith. *Letsos*, 285 Ill. App. 3d at 1068-69, 675 N.E.2d at 227.

■ The evidence here showed that (1) although Wisegarver found out in early February 1993 that the property was not within the city's zoning limits (which meant that it would be subject to less demanding development requirements), he nonetheless told Kirkruff that it would be a "very risky development"; (2) in early February 1993, Wisegarver entered into an agreement with Altech Consultants, in which Altech agreed to plat a 20-acre subdivision for a project named "Wisegarver Section 32 Subdivision"; (3) according to Kirkruff, Wisegarver never informed her that he had hired Altech to develop the property as his subdivision; (4) Wisegarver never told Kirkruff that the property's location outside the city's zoning limits was good for development purposes or that he had contacted Altech to determine the property's location relative to the city; (5) Wisegarver never listed or advertised the property as Kirkruff requested him to do; (6) according to Kirkruff, Wisegarver never showed her the February 12, 1993, letter from Marathon indicating that it had completed flagging of the pipeline on the property; (7) during January through April 1993, Wisegarver never advised Kirkruff that he was attempting to develop the property for his own gain and that she should find another realtor to represent her interests; (8) Wisegarver failed to give plaintiffs written notice that he was acting on his own behalf in the transaction between them; and (9)

Wisegarver failed to disclose to plaintiffs the potential costs and profits of developing and subdividing the property.

Based on our review of the record in this case, we conclude that the evidence supports the jury's verdict under the *Pedrick* standard.

### 4. *Proximate Causation*

Wisegarver also contends that the evidence failed to show that his breach of his fiduciary duty proximately caused plaintiffs' injury because plaintiffs presented no competent expert testimony that they could have duplicated Wisegarver's $90,324.74 profit. We disagree.

The supreme court in *Martin II* held that "plaintiffs must prove that a defendant's actions proximately caused their injuries before they can recover in tort, *even in instances of intentional torts where fiduciaries are involved.*" (Emphasis added.) *Martin II*, 163 Ill. 2d at 59, 643 N.E.2d at 747. Plaintiffs agree that the *Martin II* court so held; however, they contend that because *Martin II* involved a securities case, the supreme court's discussion of "loss causation" (a term originally used by federal courts in dealing with proximate cause in securities cases) is inapplicable to the present case.

In *Martin II*, a group of investors sued a securities broker for breach of fiduciary duty and fraud. In determining whether the plaintiffs could recover their full investment losses under the Act, the supreme court held that, in securities cases, plaintiffs must prove both (1) transaction causation (cause in fact), and (2) loss causation (a term analogous to proximate cause). The court set out the specific question to ask under such circumstances to determine whether a plaintiff has proven loss causation, or proximate cause, as follows:

> " 'Would the decline in plaintiff's investment have occurred even if defendant's misrepresentation had been true? If the answer to this question is "yes," plaintiff has failed to prove that the misrepresentation proximately caused the decline.' " *Martin II*, 163 Ill. 2d at 62, 643 N.E.2d at 748, quoting W. Prosser, Torts § 110, at 732 (4th ed. 1971).

We agree with plaintiffs that the *Martin II* court's *specific* discussion regarding loss causation in securities cases does not apply to the present case. In our judgment, however, the *Martin II* court's general discussion of proximate cause informs our analysis of the proximate cause issue in this case.

In *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992), the supreme court discussed proximate cause, as follows:

> "The term 'proximate cause' describes two distinct requirements: cause in fact and legal cause, which is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm."

Prosser has noted that while a misrepresentation may have induced a transaction, proximate cause limits recovery to "those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." W. Prosser, Torts § 110, at 732 (4th ed. 1971). In addition, section 548A of the Restatement (Second) of Torts provides, as follows:

"A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." Restatement (Second) of Torts § 548A, at 106 (1977).

Restatement (Second) of Torts, section 548A, comment *b*, provides:

"Pecuniary losses that could not reasonably be expected to result from the misrepresentation are, in general, not legally caused by it and are beyond the scope of the maker's liability. This means that the matter misrepresented must be considered in the light of its tendency to cause those losses and the likelihood that they will follow." Restatement (Second) of Torts § 548A, Comment *b*, at 107 (1977).

■ Consistent with this authority, we hold that to recover for misrepresentation in cases involving breach of fiduciary duty, plaintiffs must prove (1) cause in fact—namely, that the misrepresentation in fact induced the recipient to enter into the transaction; and (2) proximate cause—namely, that the character of the fiduciary's misrepresentations could reasonably be expected to result in the recipient's injury. Therefore, in this case, plaintiffs had to show that the character of Wisegarver's misrepresentations and omissions could reasonably be expected to result in their injury—that is, their missed opportunity to develop the property. It follows then that plaintiffs' missed opportunity to develop the property could not reasonably be expected to result from Wisegarver's misrepresentations and omissions if plaintiffs could not have developed the property regardless of Wisegarver's misrepresentations and omissions. However, we disagree with Wisegarver's assertion that plaintiffs had to show that they could have developed the property *on their own*. If we were to accept such an assertion, a realtor could almost always avoid liability for his misrepresentations or omissions given that few untrained private property owners could develop property without any assistance whatsoever. Moreover, we disagree with Wisegarver's contention that plaintiffs had to show that they could have *duplicated* Wisegarver's profits. That contention goes solely to the measure of damages.

■ The evidence here showed that (1) Wisegarver told Kirkruff that problems existed with the property—namely, a gas pipeline ran through the property and problems would arise with the annexation;

(2) Wisegarver told her that developing the property would be "too costly" and "too time-consuming" for her to do it; (3) even though Wisegarver knew the property was not within the city's zoning limits (which meant that it would be subject to less demanding development requirements), he nonetheless told Kirkruff that it would be a "very risky development"; (4) he failed to give plaintiffs written notice that he was acting on his own behalf in connection with the development; (5) he told Kirkruff the property was worth no more than $2,300 per acre; and (6) he failed to tell Kirkruff that he was attempting to develop and subdivide the land on his own or that she should find another realtor to represent her interests.

Further, the evidence showed that had Kirkruff known that Wisegarver was in the process of developing and subdividing the property on his own, she would not have sold him the property for $46,000. Instead, she would have contacted another realtor to assist her in developing the property herself, and she "[e]asily" had enough assets to develop the property. Kaisner, plaintiffs' expert, testified that although she did not know of anyone who would simply hire themselves out to develop property for an out-of-town property owner, her experience has shown that "most people would be interested in doing it, doing it for himself or with partners or some type of a partner arrangement." In addition, DiNovo, director of the county's zoning and planning department (Department), testified that if a property owner has a right to develop property based upon its zoning classification, the Department has a duty to allow the development if the owner complies with the technical requirements. Finally, perhaps the best evidence of the property's development potential was the fact that Wisegarver actually developed it.

Based on our review of the record in this case, we conclude that the evidence supports the jury's verdict under the *Pedrick* standard.

Accordingly, we hold that the trial court did not err by denying Wisegarver's motions for directed verdict or judgment *n.o.v.*

### B. The Trial Court's Entry of Judgment on Count I in Excess of the Jury's Award

Last, Wisegarver argues that the trial court erred by entering judgment on count I in an amount in excess of the jury's award of $58,200. In response, plaintiffs argue that the court properly ordered an *additur* because once the jury found Wisegarver liable on count I, the amount of damages was fixed and liquidated in the amount of $90,324.74. We agree with plaintiffs.

In *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 456-57, 516 N.E.2d 260, 264-65 (1987), the supreme court discussed *additur*, as follows:

"*Additur*, though not available in the Federal courts [citation], has been used in State courts and, indeed, may have first appeared in an Illinois case, *Carr v. Miner* (1866), 42 Ill. 179 ([citation]). In *Carr*, an action in assumpsit, the jury erroneously allowed the plaintiff 6% interest on his award rather than 10%, a rate that the defendant had previously agreed to pay. The defendant consented to an *additur*, and the trial judge therefore denied the plaintiff's motion for a new trial, finding no other error in the case. This court affirmed the trial judge's action:

> 'The evidence showed that defendant always recognized his liability to pay ten per cent interest, and under the statute he could bind himself for that rate, by agreement. This the jury should have allowed. *** It was a case in which the amount could be calculated with certainty when the basis was found. The practice is one that should be sparingly indulged, and should never be adopted except in clear cases.' "

*Additur* is unavailable where unliquidated tort damages are at issue. *Bernesak v. Catholic Bishop*, 87 Ill. App. 3d 681, 691-92, 409 N.E.2d 287, 295 (1980).

In *Perry v. Engel*, 296 Ill. 549, 554, 130 N.E. 340, 343 (1921), the supreme court discussed the measure of damages in cases involving misrepresentation by a real estate broker and wrote the following:

> "An agent *cannot take any advantage of his position to speculate to the injury of his principal*, and *all profits and advantages gained in the transaction of the agent belong to the principal*. The relation of principal and agent is one of trust and confidence, and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. The rule is the same no matter how large or how small the commission paid may be or whether the agent is a mere volunteer at a nominal consideration. [Citations.] Under the relation of the parties here, [the principals] had a right to all the benefits and advantages of the transaction ***." (Emphasis added.)

In *Perry*, a real estate broker misrepresented information to his clients and profited personally from the purchase and resale of the clients' property. *Perry*, 296 Ill. at 552, 130 N.E. at 342. In *Sams v. Rigg*, 339 Ill. App. 25, 31, 88 N.E.2d 673, 676 (1949), the real estate broker did business secretly with a purchaser who paid more for the property than the broker disclosed to his principals. The *Sams* court, relying on *Perry*, held that the principals had a right to the profit the broker made from the secret transaction. *Sams*, 339 Ill. App. at 31, 88 N.E.2d at 676.

The rule set forth in *Perry* comports with section 549, comment *i*, of the Restatement (Second) of Torts, which discusses the measure of

damages in misrepresentation cases where the recipient of the misrepresentation has suffered no out-of-pocket loss. That section provides as follows:

"When the value of what the plaintiff has received under the transaction with the defendant is fully equal to the value of what he has parted with, he has suffered no out-of-pocket loss, and under the rule stated in [s]ubsection (1), [c]lause (a) [providing that the recipient of misrepresentation may choose to recover his actual out-of-pocket loss], he could recover no damages. This would mean that the defrauding defendant has successfully accomplished his fraud and is still immune from an action in deceit. Even though the plaintiff may rescind the transaction and recover the price paid, the defendant is *enabled to speculate on his fraud and still be assured that he can suffer no pecuniary loss. This is not justice between the parties*. The admonitory function of the law requires that the defendant not escape liability and justifies allowing the plaintiff the benefit of his bargain." (Emphasis added.) Restatement (Second) of Torts § 549, Comment *i*, at 115 (1977).

See also W. Keeton, Prosser & Keeton on Torts § 110, at 768 (5th ed. 1984) ("in many cases the out-of-pocket measure will permit the fraudulent defendant to escape all liability and have a chance to profit by the transaction if he can get away with it").

■ Based upon the foregoing authority, we conclude that once the jury found Wisegarver liable, the amount of damages was fixed at the amount of Wisegarver's net profit on the subdivision. In so concluding, we note that Wisegarver contends that the net profit included his personal services as developer, organizer, monitor, construction manager, and sales broker, and that those personal services arguably totalled $90,000, thereby leaving him with no profit. However, Wisegarver himself prepared the account ledger which indicated his net profit totalled $90,324.74, and had he so desired, he could have reflected the costs of his personal services on that ledger or testified as to the costs of his services.

### C. The Trial Court's Determination That Wisegarver Did Not Violate the Act

On cross-appeal, plaintiffs argue that the trial court's determination that Wisegarver did not violate the Act (815 ILCS 505/2 (West 1992)) was against the manifest weight of the evidence. Although we accept the court's factual findings, we nonetheless hold that it erred by determining that Wisegarver's actions and omissions did not violate the Act.

Section 2 of the Act provides as follows:

"Unfair methods of competition and unfair or deceptive acts or

practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression[,] or omission of any material fact, with intent that others rely upon the concealment, suppression[,] or omission of such material fact, or the use or employment of any practice described in [s]ection 2 of the 'Uniform Deceptive Trade Practices Act', *** are hereby declared unlawful whether any person has in fact been misled, deceived[,] or damaged thereby." 815 ILCS 505/2 (West 1992).

Section 2 of the Uniform Deceptive Trade Practices Act (Uniform Act) provides, in relevant part, as follows:

"A person engages in a deceptive trade practice when, in the course of his business, vocation[,] or occupation, he: ·

* * *

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." 815 ILCS 510/2(12) (West 1992).

■ Thus, to state a claim under section 2 of the Act, a plaintiff must allege and prove that (1) the defendant performed a deceptive act or practice, including concealment or omission of any material fact; (2) the defendant intended that the plaintiff rely on the deception; and (3) the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996). A material fact exists where the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act. *Connick*, 174 Ill. 2d at 505, 675 N.E.2d at 595. In addition, courts should liberally construe and broadly apply the Act to eradicate all forms of deceptive and unfair business practices. *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805, 612 N.E.2d 984, 987 (1993).

In its June 1997 order, the trial court wrote the following:

"Although the Act clearly applies to [Wisegarver], the [c]ourt does not find that the plaintiff has proven, by a preponderance of the evidence, any deception, fraud, false pretense, false promise, misrepresentation[,] or the concealment, suppression[,] or omission of any material fact within the meaning of the Act.

The [c]ourt, however, does have concerns about [Wisegarver's] actions vis a vis the plaintiff from a fiduciary standpoint during the period, at the least, from January 7, 1993[,] to February 8, 1993[,] and, possibly, until when the sales contract was actually signed on April 14, 1993. The court's concerns, however, are technical in nature and relate solely to the high duties imposed legally upon a fiduciary in this situation. The [c]ourt does not believe that its

findings on this count are inconsistent with the jury's finding on [c]ount I. The jury could have found that the breach of fiduciary duty did not stem from any deception, fraud[,] or misrepresentation, but simply from technical, albeit intentional, breaches of the duty. For instance, the issues instruction indicates that the fiduciary relationship could have been breached by failure to give written notice that he was acting on his own behalf (i), by failing to use his best efforts to procure the best and highest selling price (h), by failing to remain loyal to the interest of the plaintiffs when he failed to list the property for sale (e), and by placing his own interests ahead of the plaintiffs (d) ***. The jury was also informed of a statute that required that a person holding a real estate license cannot act for more than one party without providing written notice ***. Indeed, the only allegation of breach of fiduciary relationship by a material misrepresentation in the issues instruction was subparagraph (a) [namely, Wisegarver misrepresented to plaintiffs that it was not economically feasible to subdivide the land]."

Reading the trial court's comments in context, it appears that—contrary to plaintiffs' assertion—the court was aware that concealment, suppression, or omission of information could support a violation of the Act. The court, in discussing "technical" breaches, was instead referring to whether Wisegarver's actions or omissions involved *material* facts, not whether Wisegarver had concealed, suppressed, or omitted facts. Moreover, it appears that the court accepted most of the jury's findings of fact. In particular, the court noted that the jury could have found that Wisegarver's breach of his fiduciary duty stemmed from "technical, albeit intentional breaches," such as (1) Wisegarver's failure to give written notice that he was acting on his own behalf to develop the property as a subdivision; (2) his failure to use his best efforts to procure the best and highest selling price for the property on plaintiffs' behalf; (3) his failure "to remain loyal to the interest of the plaintiffs when he failed to list the property for sale"; (4) Wisegarver's placing his own interests ahead of plaintiffs' interests when he proceeded to subdivide the land and sell the parcels for a substantially higher aggregate price than he paid for the land; and (5) his failure to provide written notice that he was acting for more than one party. Although the court apparently accepted those factual findings, it nonetheless determined that those acts and omissions by Wisegarver did not come within the scope of the Act.

■ Generally, a reviewing court will not reverse a trial court's decision in a bench trial regarding whether the plaintiff has proved the elements under the Act unless that decision is against the manifest weight of the evidence. This is so because whether the plaintiff has proved those elements usually constitutes a question of fact. *Malooley*

*v. Alice*, 251 Ill. App. 3d 51, 55, 621 N.E.2d 265, 268 (1993). In reviewing the trial court's decision in this case, however, we accept its factual determinations. Thus, because only the trial court's legal conclusions are at issue, we review those conclusions *de novo*. See *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991) ("where neither the facts nor credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider *de novo*").

Although we accept the trial court's factual determinations, we disagree with its application of the Act to those determinations. In particular, we note that Wisegarver's failure to provide plaintiffs with written notice that he was not acting solely for plaintiffs but was instead acting on his own behalf to develop the property as a subdivision constituted a violation of the Act. Clearly, this is the type of information upon which plaintiffs would be expected to rely in making a decision to act and had Kirkruff known that fact, she testified that she would have acted differently—namely, she would not have sold Wisegarver the property. Nor can there be any serious contention that Wisegarver did not intend for plaintiffs to rely upon such an omission on his part. See *Seligman v. First National Investments, Inc.*, 184 Ill. App. 3d 1053, 1064, 540 N.E.2d 1057, 1064 (1989) (where the court held that the failure of real estate brokers to disclose such self-dealing constituted consumer fraud under the Act). Moreover, we note that Wisegarver's actions and omissions constituted deceptive acts and omissions under section 2(12) of the Uniform Act (815 ILCS 510/2 (West 1992)). In particular, the following acts by Wisegarver constituted conduct which created "a likelihood of confusion or of misunderstanding" on Kirkruff's part regarding the property's development potential and value: (1) his failure to provide written notice that he was acting on his own behalf; (2) his failure to list the property for sale as he had agreed to do; (3) his failure to use his best efforts to procure the best and highest selling price for the property on the plaintiffs' behalf; and (4) his placing his own interests ahead of plaintiffs' interests by proceeding to subdivide the land and sell the parcels. Thus, because we conclude that Wisegarver's acts and omissions—which the trial court accepted as proven—constituted violations of the Act, we hold that the trial court's decision to the contrary was erroneous.

## III. CONCLUSION

In closing, we commend the trial court for its thoughtful memorandum, which we found very helpful.

For the reasons stated, we affirm the trial court's judgment in part, reverse in part, and remand for further proceedings.

Affirmed in part; reversed in part; and remanded for further proceedings.

GARMAN, P.J., and McCULLOUGH, J., concur.