2022 IL App (3d) 210410

Opinion filed October 20, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* ESTATE OF ELIZABETH MATHERS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Deceased | ) | Tazewell County, Illinois. |
| | ) | |
| (First Mid Wealth Management Company, | ) | |
| Administrator With Will Annexed of the | ) | |
| Estate of Elizabeth Mathers, Deceased, | ) | |
| | ) | Appeal No. 3-21-0410 |
| Petitioner-Appellee, | ) | Circuit No. 20-P-40 |
| | ) | |
| v. | ) | |
| | ) | |
| Thomas Burke and American Angus Hall of | ) | |
| Fame, | ) | Honorable |
| | ) | Paul E. Bauer, |
| Respondents-Appellants). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Peterson and Hettel concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    On citations to discover assets in a probate action, the respondents, American Angus Hall

of Fame (American Angus) and Thomas Burke, appealed orders entered in favor of the petitioner,

First Mid Wealth Management Company, as the administrator of the estate of Elizabeth Mathers.

¶ 2                                    I. BACKGROUND

¶ 3　　　　The petitioner, as the administrator of the estate of Mathers, filed a petition pursuant to section 16-1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1(d) (West 2020)) to issue citations to discover and recover assets against the respondents. The petition alleged that Mathers, doing business as Top Line Farm, owned and bred cattle and produced embryos. Top Line Farm's manager, First Illinois Ag Group, engaged American Angus to manage, oversee, and conduct the sale of cattle and other assets. The sale was conducted on October 25, 2019, but the net proceeds had not been paid to Mathers's estate (Mathers passed away on December 14, 2019). The petition sought an accounting, and it alleged conversion of the proceeds of the sale by American Angus and its owner/principal, Burke. On August 3, 2020, the trial court issued the citations for the production of documents and the recovery of assets.

¶ 4　　　　The respondents provided some of the documents to the petitioner but provided the remaining documents only after being held in contempt. On November 17, 2020, the petitioner filed a motion for the forfeiture of the respondents' compensation, the sales management fee of $42,783, based upon the respondents' alleged breach of fiduciary duty with respect to the proceeds from the sale. The petitioner also filed a motion to recover attorney fees and costs based upon the respondents' breach of fiduciary duty and a separate petition for an award of attorney fees based on the prior order of contempt. On January 20, 2021, the trial court entered an agreed order regarding the petition for attorney fees for the contempt proceedings, awarding fees in favor of the petitioner and against the respondents in the amount of $4365. The trial court also entered an order to show cause, ordering Burke to appear in court on February 24, 2021, to show cause, if any, as to why he should not be held in indirect civil contempt for his willful failure to comply with the trial court's prior order.

¶ 5    Burke failed to appear in court on February 24, 2021, and the respondents were defaulted, although the default was later vacated. On March 1, 2021, the trial court entered an order granting the petitioner's motion for attorney fees and costs for all matters related to the citations to discover assets, with the amount to be determined.

¶ 6    On May 11, 2021, the petitioner filed a supplemental motion for an award of attorney fees and costs, seeking $39,642.85 in attorney fees for all the legal services rendered relating to the citations to discover assets. That amount included the previously agreed amount of $4365, which had not been paid. The motion asked the court to reserve the issue of additional attorney fees and costs until the matter was concluded.

¶ 7    The matter proceeded to a hearing on the final accounting and the pending motions on May 14, 2021. Prior to the hearing, the parties stipulated to a number of figures. After deducting agreed expenses of the sale, direct and prior payments to the petitioner, the respondents' compensation, and credits from the gross sales amount of $855,600, the parties agreed that the uncollected accounts receivables, in the amount of $52,031, was the amount in dispute.

¶ 8    At the hearing, Garrett Lampe testified that he had been the general manager for Top Line Farm since 2011. Lampe was in charge of breeding, marketing, and coordinating any auctions or sales of cattle. American Angus managed all of Top Line Farm's sales over the years. For the majority of the sales, Lampe testified that he compiled all the information to provide to American Angus, and Lampe also prepared the cattle and hired crews and sales staff. For all the prior sales, Top Line Farm handled all the credits and partnership issues with the cattle, and Top Line Farm also handled the collection of money. For the prior sales, American Angus was responsible for building the catalog and conducting the sale. According to Lampe, American Angus always charged 5% of the gross sales to manage the sales. Lampe testified that the 2019 sale was different

3

than the prior sales because it was a disbursal sale. Lampe testified that he had a meeting with Jeremy Haag, who was an employee of American Angus, and Lampe told Haag that Top Line Farm was not capable of clerking the sale and collecting the money. Haag agreed that American Angus would handle billing and the collection of funds. American Angus was to be compensated the same as prior sales, 5% of the gross sales.

¶ 9    Burke testified that he owned American Angus. Burke testified that American Angus did not generally clerk the sales that it managed, but when it did, that involved sending out the invoices, receiving the payments, and disbursing the money received once everything was settled. Burke testified that the disbursal sale for Top Line Farm was complicated because Mathers passed away. Burke's understanding of the agreement between Top Line Farm and American Angus, from his employee Haag, was that American Angus was going to conduct the sale, send out invoices, and collect the money received, making every effort to collect outstanding accounts. If there was a problem, it would be referred back to Top Line Farm. Burke testified that American Angus did not guarantee the collections of funds, and it was not American Angus's obligation to file a lawsuit to collect unpaid invoices for Top Line Farm.

¶ 10    In an order dated May 24, 2021, the trial court ruled that the respondents assumed the duty of collection for the sale and owed the petitioner the outstanding accounts receivable.[1] The order contained an assignment to the respondents of the petitioner's rights and benefits related to the subject accounts receivable. The trial court further ordered attorney fees and costs in favor of the petitioner in the amount of $35,277.85. The order denied the petitioner's motion for forfeiture of the respondents' compensation. The respondents filed a motion to reconsider the amount of the

_____

[1]The trial court order states that the amount of outstanding accounts receivable was $52,301, which appears to be a typographical error. The amount stipulated to at trial was $52,031.

4

final accounting and the award of attorney fees. The petitioner filed a motion to reconsider the denial of its motion for forfeiture of the respondents' compensation.

¶ 11    In an order dated August 4, 2021, the trial court denied the respondents' motion to reconsider and granted the petitioner's motion. Judgment was entered in favor of the petitioner in the amount of the respondents' compensation, which was $42,783. The petitioner filed a petition for attorney fees incurred subsequent to April 28, 2021, which was granted in part by agreed order on September 1, 2021, awarding the petitioner an additional $3469.20. The respondents appealed the March 1, 2021, order granting the petitioner's motion for attorney fees and costs, the May 24, 2021, order awarding the petitioner the amount of the outstanding accounts receivable and granting the petitioner's supplemental motion for attorney fees, and the August 4, 2021, order denying the respondents' motion to reconsider and granting the forfeiture of the respondents' compensation.

¶ 12                                          II. ANALYSIS

¶ 13    The parties agree that there was an oral contract whereby the respondents were to conduct the final disbursement sale for Top Line Farm. The respondents argue, though, that the trial court erred in finding the terms of the oral contract not only included an obligation to manage the sale and collect payments, but the contract also included an obligation by the respondents to be responsible for any uncollectible accounts. The petitioner argues that the trial court's finding was not against the manifest weight of the evidence.

¶ 14    Under the Probate Act, to recover property of an estate that is in the possession of others, the representative of the estate must initially establish a *prima facie* case that the property belongs to the decedent's estate and, if shown, the burden then shifts to the respondent to prove his or her right to possession by clear and convincing evidence. *In re Estate of Elias*, 408 Ill. App. 3d 301, 315 (2011). We will not disturb a trial court's finding that certain property does or does not belong

5

to the estate unless it is against the manifest weight of the evidence. *Id.* at 316. Also, the existence and terms of an oral contract is determined by the trier of fact, so we will not set aside those findings unless they are contrary to the manifest weight of the evidence. *Mormat Electrical & Construction Services, LLC v. Hunter Construction Services, Inc.*, 2019 IL App (5th) 170316, ¶ 8.

¶ 15     We find the trial court's conclusion that the oral contract included an obligation by the respondents to be responsible for any uncollectible accounts to be against the manifest weight of the evidence. The evidence does not support the conclusion that the respondents not only agreed to take on the task of making collections, but it also guaranteed all the collections.[2] The evidence established that the final disbursement sale was different from the parties' prior arrangements in that American Angus agreed to the additional term of collecting the money from the sale. In the prior sales, American Angus had been responsible for conducting the sale, but Top Line Farm handled its own collections. There was no evidence that American Angus charged a greater fee for taking on a greater liability. Also, American Angus did not have any ownership rights in the cattle, so it had no authority to enforce any collection actions until after the trial court included an assignment in its court order. Additionally, American Angus had no access to the credit and partnership information necessary to determine the collectible amounts. That information was all in the hands of Top Line Farm. Thus, we reverse that portion of the May 24, 2021, order awarding the petitioner the amount of the outstanding accounts receivable, in the amount of $52,031.

¶ 16     The respondents also argue that the petitioner did not prove by clear and convincing evidence that a fiduciary relationship existed between the respondents and Top Line Farm and/or Mathers, so the trial court erred in granting the petitioner attorney fees and ordering the forfeiture

_____

[2]Although not raised by the parties in the appellate court, we note that the statute of frauds requires a promise to guaranty a debt of another to be in writing to be enforceable. 740 ILCS 80/1 (West 2020); *Ringgold Capital IV, LLC v. Finley*, 2013 IL App (1st) 121702, ¶ 15.

of the respondents' fee. The petitioner argues that there was a fiduciary relationship as a matter of law, in the manner of a principal-agent relationship.

¶ 17    "A confidential or fiduciary relationship exists 'where one party reposes special trust and confidence in another who accepts that trust and confidence and thereby gains superiority and influence over the subservient party.' " *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 585 (2011), *aff'd sub nom. Khan v. Deutsche Bank AG*, 2012 IL 112219 (quoting *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 889 (1993)). There are two kinds of fiduciary relationships: (1) as a matter of fact and (2) as a matter of law. *Id.* at 592. An agent and a principal are in a fiduciary relationship as a matter of law. *Id.*; Restatement (Third) of Agency § 1.01 (2006). "An agent is one who, acting under authority from another, transacts business for him, and a true agency requires that the agent's function be the carrying out of the principal's affairs." *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 232 (1991). Whether or not an agency relationship exists is generally a question of fact. *Kirkruff v. Wisegarver*, 297 Ill. App. 3d 826, 830 (1998).

¶ 18    The evidence shows that Top Line Farm entered into an oral agreement with American Angus for a final disbursement sale. Top Line Farm relied upon American Angus to conduct the sale and collect the proceeds, paying the net proceeds to Mathers and Top Line Farm. American Angus was entrusted to handle the sale and the funds on Mathers's behalf. The trial court's finding that there was fiduciary duty, based on this agency relationship, was not against the manifest weight of the evidence. See *A.T. Kearney, Inc. v. INCA International, Inc.*, 132 Ill. App. 3d 655, 661 (1985). Since there was a fiduciary relationship, and the respondents improperly loaned or lost a large percentage of the petitioner's proceeds to a third party, the forfeiture of the respondents' compensation was appropriate. See *Tully v. McLean*, 409 Ill. App. 3d 659, 681 (2011) (a willful and deliberate breach of a fiduciary duty requires complete forfeiture of all compensation during

7

the period of the breach). Also, based on the existence of a fiduciary duty and the respondents' actions in delaying the citation proceedings, the trial court's order of attorney fees and costs in favor of the petitioner and against the respondents was not against the manifest weight of the evidence. See *Elias*, 408 Ill. App. 3d at 326 (the circuit court has discretion to assess attorney fees against parties other than the estate); see also 755 ILCS 5/16-1(d) (West 2020) (section 16-1 of the Probate Act provides that the trial court may enter such orders and judgment as the case requires in a citation proceeding).

¶ 19                                                III. CONCLUSION

¶ 20        The judgment of the circuit court of Tazewell County is affirmed in part and reversed in part. The orders in favor of the petitioner for $35,277.85 in attorney fees and forfeiting the respondents' compensation in the amount of $42,783 are affirmed. The order finding the respondents responsible for outstanding accounts receivables in the amount of $52,031 is reversed.

¶ 21        Affirmed in part and reversed in part.

2022 IL App (3d) 210410

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Tazewell County, No. 20-P-40; the Hon. Paul E. Bauer, Judge, presiding. |
| **Attorneys for Appellant:** | J. Scott Kriegsman, of Kriegsman Dunn Attorneys, of Pekin, for appellants. |
| **Attorneys for Appellee:** | Timothy J. Cassidy, of Cassidy & Mueller P.C., of Peoria, for appellee. |